Caleb Marker (SBN 269721)
  caleb.marker@zimmreed.com
Jessica M. Liu (SBN 358713)
  jessica.liu@zimmreed.com
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Tel: (877) 500-8780
Fax: (877) 500-8781

*Counsel for Plaintiff*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE I.P., as next friend of minor plaintiff, JANE DOE I.D.,<br><br>                 Plaintiff,<br><br>     v.<br><br>ROBLOX CORPORATION,<br><br>               Defendant. | Case No: 3:25-CV-10948<br><br>**COMPLAINT**<br><br>(1) Fraudulent Misrepresentation<br>(2) Fraudulent Concealment<br>(3) Negligent Misrepresentation<br>(4) Negligence<br>(5) Negligence–Failure to Warn<br>(6) Negligence–Design<br>(7) Negligent Undertaking<br>(8) Strict Liability–Design Defect<br>(9) Strict Liability–Failure to Warn<br><br>**Jury Trial Demanded** |

Jane Doe I.P., ("Mother"), as guardian and next friend of minor Plaintiff Jane Doe I.D., ("Plaintiff"), brings this action against Roblox Corporation ("Roblox or "Defendant") to recover damages arising from the injuries that Plaintiff suffered because of Defendant's conduct in creating, designing, marketing, and distributing its online gaming and virtual reality platform (the "Platform" or the "Product"), and alleges as follows:

## INTRODUCTION

1.      This action seeks to hold Roblox accountable for operating its Platform so recklessly that it enabled a child predator (the "Abuser") to identify, target, meet, and sexually exploit Plaintiff. The Abuser's heinous exploitation of Plaintiff was made possible by Defendant's creation of a virtual playground that attracts both **half of American children under the age of sixteen**[1] and countless child predators hoping to find their next victim.

2.      To truly appreciate the atrocity of Roblox's child safety design, it is important to understand that the Platform is wholly unlike any conventional video game. Instead, Roblox describes the Platform as "the ultimate virtual universe" that seeks to "recreate [the] dynamics of real life in virtual space."[2] This "ultimate virtual universe" exists independently of any individual user and may be populated by more than 45 million users at the same time.[3]

3.      Within this "universe" are millions of games, known as "experiences," which can be created by independent users using the free Roblox developer tools and resources, or even by video game companies bringing in millions in revenue. These "experiences" have their own names and range greatly in style, with some mimicking the "dynamics of real life" and others entirely fantastical. One popular experience is a competitive dress-up game where users' avatars put on fashion shows, often using in-game currency to purchase special accessories. Another experience is a horror escape room game where users are chased by monsters through hotel rooms. Experiences can be set in theme parks, gardens, coffee shops, battle fields, schools, magical universes, racetracks, strip clubs, and more. A

---

[1] Taylor Lyles, Over Half of US Kids are Playing Roblox, and it's About to Host Fortnite-esque Virtual Parties Too, VERGE (July 21, 2020), https://tinyurl.com/4x2bn2pr.
[2] Libby Brooks & Jedidajah Otte, *Risks to Children Playing Roblox 'Deeply Disturbing', Say Researchers*, GUARDIAN (Apr. 14, 2025), https://tinyurl.com/mwnbf8dt.
[3] *The 2025 Roblox Reply: Decoded Through Search and Style*, ROBLOX (Dec. 16, 2025), https://tinyurl.com/2n2usaw9.

Roblox experience can be thought of not just as a level in a video game, but instead as a user-generated "space" that players may occupy simultaneously, in their avatar forms, for some designated purpose.

4. Roblox's mission is not just to entertain its users within these experiences, but to "build a human co-experience platform that enables billions of users to come together to play, learn, communicate, explore and expand their friendships."[4] To facilitate those friendships, Roblox allows for in-game messaging and live voice chats among users, with varying degrees of safety settings introduced over the years that nonetheless have failed to prevent the actions alleged in this Complaint. This means that a 13-year-old girl could be playing a competitive dress-up game along with middle-aged men, all while exchanging chat messages that may quickly change from a discussion of the best in-game accessories to far more nefarious topics.

5. Imagine that a single, 40-year-old man walked into a children's clothing store and began trying on accessories in the dressing room, complimenting the young girls' outfits, exchanging Instagram handles, and asking to grab frozen yogurt at the mall. This would be absurd. Parents, staff, mall security, and any surrounding adults would immediately intervene, and he may be banned from that location, or even face legal action. Even if no adults were around, his physical appearance would immediately show the children that he is not one of their peers—no amount of physical disguise or clever lies could hide the obvious truth. But now imagine that this dressing room is in an online universe where users' appearances are democratized into the same girlish cartoon avatars; the store is open 24/7 and can be accessed anytime from most digital devices; adults and children alike shop for the same outfits and are encouraged to communicate and build friendships; and the parents, store staff, and mall security are nowhere to be found. This is the world of the Roblox Platform, where the norms and protections of the physical world fall to the wayside, and nightmare scenarios come to life.

6. Despite Roblox's aggressive marketing of the Platform as safe and appropriate for children, the Platform's design recklessly leaves children vulnerable to predators. Defendant has known the vulnerabilities in its systems for years, yet Roblox failed to implement safeguards, prioritizing profits

---

[4] *Investor Relations*, ROBLOX, https://ir.roblox.com/overview/default.aspx (last visited Dec. 22, 2025).

over safety at the expense of child victims."[5]

7.      Plaintiff was 12 years old when the Abuser targeted her through the Roblox Platform. At the time, Plaintiff had already been a years-long user of Roblox, having played since she was about 8 years old.

8.      The Abuser who targeted Plaintiff is an adult man who posed as a fellow child on the Roblox Platform. The two first met while playing a game on the Platform, where the Abuser told Plaintiff they were the same age and both lived in Mississippi. The Abuser exploited Plaintiff's innocence to build a friendship through playing on the Platform before later moving communications to Instagram and Discord. Then the Abuser manipulated Plaintiff into sending explicit pictures of herself in the shower and bath, which he would use as blackmail. They later met up in person at a local mall, where Plaintiff discovered the terrifying truth—that the friend she believed to be her age was a middle-aged man. The Abuser took Plaintiff to his car and attempted to sexually assault her before she managed to escape.

9.      Because of Defendant's conduct, Plaintiff suffered this sexual abuse and exploitation. As a result of Defendant's intentional misrepresentations and actions to deliberately conceal information about child safety on its platform, Plaintiff and her Mother were misinformed and misled. Had Defendant used basic tools available to verify and screen users, Plaintiff would not have encountered a game saturated with child sexual predators who used the Platform as designed to groom and sexually exploit children like her. Had Defendant adequately disclosed that Plaintiff faced an extreme risk of exposure to child sexual predators on the Platform, Plaintiff's Mother would not have let her child use the Platform unsupervised.

## PARTIES

**A.    Plaintiff**

10.      Minor Plaintiff Jane Doe I.D., ("Plaintiff"), and Plaintiff's mother and next friend Jane Doe I.P. ("Mother"), are citizens and residents of the State of Mississippi, with a principal place of

---

[5] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, HINDENBURG RSCH. (Oct. 8, 2024), https://hindenburgresearch.com/roblox.

COMPLAINT

residence in Forrest County. Plaintiff is currently 14 years old but was 12 years old at the time of the abuse.

**B.    Defendant**

11.    Defendant Roblox Corporation is a Nevada corporation with its principal place of business in San Mateo, California. Roblox was incorporated in 2004 and became a publicly traded company through a direct listing on the New York Stock Exchange in 2021.

12.    Defendant designs, markets, and controls the Roblox Platform, a "free to use immersive platform for connection and communication."[6] Roblox primarily generates revenue through the sale of its in-game currency, "Robux," which is then spent on the Platform for certain virtual content. Roblox has over 85.3 million daily active users, with 40 percent of players under the age of 13.[7]

13.    In 2024, Roblox's revenue totaled $3.6 billion, reflecting a 28% increase from 2023.[8] The platform's revenue has grown rapidly in the last seven years, reflecting a 1,008% increase in revenue between 2018 ($3.25 million) and 2024.[9] This growth continued in 2025, with quarterly reporting reflecting 32% year-over-year growth in Roblox's revenue in the first three quarters of 2025.[10]

## JURISDICTION AND VENUE

14.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000.

15.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal places of business within this District.

16.    Venue is proper here under 28 U.S.C. § 1391(b) because Defendant is a resident of California and resides in this District; and a substantial part of the events or omissions giving rise to the claims occurred in this District.

17.    Assignment to the San Francisco Division or the Oakland Division is proper under Civil

---

[6] Roblox Corp., Annual Report (Form 10-K) (Feb. 18, 2025).
[7] Katherine Fung, *How Roblox Became a Trusted Playground for Millions of Kids*, NEWSWEEK (Apr. 23, 2025), https://tinyurl.com/jywfvpfc.
[8] Roblox Corp., *supra* note 6.
[9] Id.
[10] Roblox Corp., Quarterly Report (Form 10-Q) (Oct. 30, 2025).

L.R. 3-2(c) because Defendant is headquartered in San Mateo, and a substantial part of the events or omissions giving rise to the claims occurred therein.

## FACTUAL ALLEGATIONS AS TO DEFENDANT ROBLOX

**A.    Roblox is a Gaming Platform and Virtual Universe that Primarily Targets Children.**

18.    Roblox is the world's most downloaded gaming platform, offering over 40 million games. Players spend an average of over two hours daily on the Platform, which emphasizes social interaction between users in games, online communities, and instant messaging via direct and voice chats.[11]

19.    Marketed as the "#1 gaming site for kids and teens," Roblox is free to download across devices, including gaming consoles, computers, tablets, and cellphones, and has no minimum age requirement.

20.    The pandemic accelerated Roblox's growth, reaching 30 million daily users by September 2020. More than half of these users were under 13. In 2024, Roblox had 82.9 million average daily active users who collectively spent 73.5 billion hours on the platform over the course of the year.[12] Among these users, 56% were under the age of 17, including 20% under 9, 20% between 9 and 12, and 16% between 13 and 16.[13]

21.    At all times relevant to this Complaint, an individual needed only to provide a birthdate, username, and password to create a Roblox account. Roblox users were not required to verify their age or obtain parental permission to sign up. Because there was no age verification, users could freely assign themselves any age and make themselves appear to other users and to Roblox as older or younger than they were.

22.    After opening an account, the player creates an "avatar"—a blocky cartoonish character that represents the individual player in the Platform's virtual world. Depending on the particular

---

[11] *Research by App Category: Gaming*, QUSTODIO, https://tinyurl.com/8d5f5kfb (last visited Dec. 22, 2025).
[12] Roblox Corp., *supra* note 6, at 9.
[13] Id.

experience, the player may customize the avatar's appearance and clothing. The player may also choose for the avatar to appear as a "boy" or a "girl." There is no way to know a player's true age, gender, or identity based on the appearance of their avatar. Even if an adult user of Roblox enters their true age to the Platform, the user's avatar remains the same cartoonish figure as that of a child user.

23.     Roblox drives its revenue through the sale of "Robux," a digital currency acquired with real-world money that can then be used for avatar customization and in-game purchases which can be purchased through a single transaction, subscriptions, or gift cards.

24.     At all times relevant to this Complaint, Roblox's default settings allowed adults to freely message children, both through direct (i.e., private) messages after an adult "friended" a child, and within games.

**B.      Roblox's Empty Safety Promises Mislead Parents and Leave Kids at Risk.**

25.     To ensure parents would allow their children to use the Platform, Roblox has engaged in a long-standing public relations campaign to falsely assure parents and users that its Platform is safe for children. Since 2007, the Roblox website has promoted the Platform as a "family friendly" environment, emphasizing safety controls, content moderation, and privacy protections.

26.     Examples of these false reassurances appear throughout archived and current versions of Roblox's website. For example, in 2007, the website claimed that Roblox is an "online virtual playground . . . where kids of all ages can safely interact, create, have fun, and learn."[14] In 2017, Roblox claimed it "take[s] kids' safety and privacy very seriously" and "strive[s] to continually develop new and innovative technologies that will protect the safety of [its] community" and that its Platform is "a safe, moderated place to meet, play, chat, and collaborate on creative projects."[15] These assurances and claims have not changed since Roblox was founded.[16]

---

[14] *Frequently Asked Questions (FAQs)*, ROBLOX, https://tinyurl.com/yc3fyybf (archived Nov. 5, 2007); *see also Keeping Kids Safe*, ROBLOX https://tinyurl.com/4fehxkz2 (archived May 1, 2008); *Information for Parents*, ROBLOX, https://tinyurl.com/mttt9pcc (archived Jan. 31, 2016).
[15] *Parents' Guide*, ROBLOX, https://tinyurl.com/4d329zyx (archived Jul. 16, 2017).
[16] *See, e.g., For Parents*, ROBLOX, https://web.archive.org/web/20230405060048/https://corporate. roblox.com/parents/ (archived Apr. 5, 2023); *Roblox FAQ*, ROBLOX, https://web.archive.org/web/ 20230328011957/https://corporate.roblox.com/faq/ (archived Mar. 28, 2023); *Roblox & User Data FAQ*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4406238486676-Roblox-User-Data-FAQ (last visited Dec. 22, 2025).

27.     Currently, Roblox flaunts its "stringent safety system and policies;" vast content moderation team "protecting [] users and monitoring 24/7 for inappropriate content;" machine and human review of uploaded images and other files; and chat filters for inappropriate content, which "are even stricter" for children under 13 and "include any potentially identifiable personal information, [and] slang." [17]

28.     Roblox executives have constantly repeated these promises and assurances in public statements. Roblox CEO David Baszucki declared in an interview: "We take every precaution possible to make sure kids are protected from inappropriate and offensive individuals as well as from indecent and distasteful content," parroting language from Roblox's website.[18]

29.     Roblox Vice President of Civility and Partnerships, Tami Bhaumik, has echoed false safety promises in the media. In 2019, Bhumik emphasized that Roblox "make[s] sure there's a safe environment," citing Roblox's "tremendous reporting system" and "incredible moderation and CS team that reacts very, very quickly."[19] In 2022, Bhaumik continued to boast about safety on Roblox including statements that Roblox's "number one priority" is "to create a safe, civil, and inclusive community;" that "[s]afety and civility has always been baked into everything that we do;" that Roblox's purported safety protections included "thousands of human moderators" and "machine learning that is constantly taking a look at chat filters;" that "[a]ny sort of bad actor that comes onto the platform is dealt with swiftly;" and that Roblox removes any reported content "within minutes."[20]

30.     Roblox Chief Safety Officer, Matt Kaufman, reprises these glossy false promises in statements on Roblox's website and in the media. [21]

---

[17] *Safety & Civility at Roblox*, ROBLOX, https://en.help.roblox.com/hc/en-us/articles/4407444339348-Safety-Civility-at-Roblox (last visited Dec. 22, 2025).

[18] Tony Sims, *Interview with David Baszucki, Founder & CEO of Roblox*, WIRED (Feb. 7, 2013), https://www.wired.com/2013/02/roblox.

[19] Thoughtworks, *Digital Civility Panel*, YOUTUBE (Oct. 23, 2019), https://tinyurl.com/4yutbu5z.

[20] ConnectSafely, *Ask Me Anything: Roblox*, Vimeo (Jan. 4, 2022), https://vimeo.com/662350252; Into the Metaverse, *EP.21: Tami Bhaumik (Roblox) – Building a Safe & Resilient Metaverse*, YOUTUBE (Sept. 13, 2022), https://www.youtube.com/watch?v=LT5_bBOYS9A.

[21] *See, e.g.*, Matt Kaufman, *Driving Civility and Safety for All Users*, ROBLOX (July 22, 2024), https://corp.roblox.com/newsroom/2024/07/driving-civility-and-safety-for-all-users; Matt Kaufman, *Scaling Safety and Civility on Roblox*, ROBLOX (Apr. 4, 2024),

COMPLAINT

31.     Roblox furthered its deceptive public relations campaign by leveraging ties to online safety organizations and experts to mislead the public about its safety features. While these organizations and experts hold themselves out as independent, they are closely tied to Roblox officers and receive funds from Roblox. For instance, Bhaumik chairs the board of the Family Online Safety Institute ("FOSI"), which recently endorsed Roblox's new features as a win for child safety without acknowledging Bhaumik's role at both organizations.[22] Roblox highlights praise from "experts" like FOSI and ConnectSafely, a similar organization, though both have financial ties to Roblox.[23] These endorsements, repeated by outlets like *Newsweek*, paint Roblox as a "trusted playground" while concealing conflicts of interest.[24]

**C.      Despite Roblox's Safety Promises, the Platform is a Toxic Environment that Enables Predators to Abuse Children.**

32.     Roblox uses its public statements to promote its Platform as a safe place for children. But behind these public statements lies a platform that maintains an environment packed with obscene and sexually explicit content where child sexual predators are empowered to target, groom, and sexually exploit children.

**1.      Roblox is Packed with Sexually Explicit Content.**

33.     Roblox offers countless virtual world experiences where children's avatars can engage in experiences simulating sexually explicit behaviors.

---

https://corp.roblox.com/newsroom/2024/04/scaling-safety-civility-roblox; Scott Tong & James Perkins Mastromarino, *Roblox Chief Safety Officer on New Safety Features, Past Cases of Child Abuse on the Platform*, WBUR (Nov. 18, 2024), https://tinyurl.com/95ytncbv.

[22] Anna Halkidis, *What Roblox's Latest Changes Mean for Your Kids' Online Safety*, PARENTS (Nov. 18, 2024), https://www.parents.com/roblox-new-parental-controls-8747405; *FOSI Welcomes Roblox Vice President as New Board Chair*, FOSI (Oct. 12, 2022), https://www.fosi.org/about-press/fosi-welcomes-roblox-vice-president-as-new-board-chair.

[23] Matt Kaufman, *New Tools for Parents to Personalize Their Child's Experience on Roblox*; ROBLOX (Apr. 2, 2025), https://corp.roblox.com/newsroom/2025/04/new-parental-controls-on-roblox.

[24] Fung, *supra* note 7.

34.     These experiences include "condo games" where users simulate sex with other users,[25] games like "Public Bathroom Simulator Vibe," where users simulate sexual activity in virtual bathrooms,[26] and virtual strip clubs, where avatars perform sexually explicit acts.[27]

35.     The Platform also hosts hundreds of games trivializing sexual abuse and criminal conduct, including references to Sean "Diddy" Combs and Jeffrey Epstein, both of whom have been convicted of sex-crimes.[28] For example, games such as "Escape to Epstein Island" glorify sex trafficking and abuse.

36.     Most experiences are created by third-party developers using Roblox's developer tools, which the company controls. But instead of exercising its control to promote child safety, Roblox gives unbounded access to developers who use these tools to build sexually explicit content.

37.     Roblox's tools allow developers to manipulate avatars and their interactions, deploying them to create scenarios where avatars simulate sexual activity. Reports of simulated sexual activity include simulated rapes of children's avatars by other users' avatars, regular incidents of naked avatars, and other instances of simulated sexual violence.[29]

38.     Roblox knows that these experiences pervade its Platform and that its developer tools allow for the continued generation of these experiences. Indeed, internal documents reveal that Roblox monitored these experiences and tools and made decisions including "[h]ow big of a 'bulge'" on an avatar was acceptable, and whether players could be nude.[30] But despite knowing how these its tools are used to simulate sexual activity and violence, and its ability to control these tools and experiences, Roblox continued to allow this type of content to flourish on its Platform.

39.     The dangers on Roblox extend beyond these games. Roblox groups with thousands of

---

[25] EJ Dickson, *Inside the Underground Strip-Club Scene on Kid-Friendly Gaming Site Roblox*, ROLLING STONE (Sept. 12, 2021), https://tinyurl.com/a3psuhyr.

[26] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5.

[27] Dickson, *supra* note 25.

[28] Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids, supra note 5.

[29] *See, e.g.*, Savannah Levins, *North Carolina Mom Outraged After Roblox Game Depicts Violent Acts, Including Rape*, WFMYNEWS2 (June 30, 2018), https://tinyurl.com/2svyz7s8.

[30] Joseph Cox & Emanuel Malberg, *Leaked Documents Reveal How Roblox Handles Grooming and Mass Shooting Simulators*, VICE (Aug. 1, 2022), https://tinyurl.com/3dwttf9j.

members openly trade and sell child pornography and solicit minors.[31] Roblox leaves these groups open to all users with no age restrictions.

40. Roblox's tools and software have also enabled individuals to create pornographic content featuring Roblox avatars that proliferate on external sites, often tied to experiences like Brookhaven, a popular, seemingly benign game open to users of all ages.[32]

41. Roblox's continued tolerance of the sexual content described above underscores the emptiness of its safety assurances.

### 2. Roblox Turns a Blind Eye to Predators' Patterned and Systematic Use of the Platform.

42. Roblox serves as a primary location for predators to identify, groom, sexually abuse, and sexually exploit children. Roblox gives these predators unfettered access to millions of child users, enabling them to identify and target vulnerable children.

43. Predators using Roblox follow an established playbook: a predator exploits the lack of identity and age verification on Roblox by misrepresenting their age and posing as a child, methodically befriends vulnerable children, and then strategically manipulates children to move the conversation to external apps like Instagram, Discord, or Snapchat.[33] The predator then escalates the abuse by, among other things, soliciting explicit images or videos, constituting child pornography.

44. Predators also employ another pattern of abuse through blackmail, whereby predators threaten Roblox child users with exposing either fabricated or genuine explicit images unless victims comply with the predator's demands, a tactic also enabled by Roblox's intentionally inadequate monitoring systems.

45. Predators often use Roblox's virtual currency system to exploit children by offering the highly desirable in-game currency, Robux, in exchange for explicit photos. Roblox receives a transfer fee for each of these Robux exchanges, directly profiting from the sexual exploitation of its child users.

---

[31] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5 (finding groups as large as 103,000).

[32] *Id.* (finding over 250,000 results when searching a porn website for "Roblox").

[33] *The Dirty Dozen List '24: Roblox*, NAT'L CTR. ON SEXUAL EXPLOITATION, https://endsexual exploitation.org/roblox/ (last updated Dec. 4, 2024).

Again, Roblox knows about these established patterns and practices it enables on its platform and turns a blind eye in exchange for profit.

46.    Grooming that began on Roblox often escalates beyond virtual communication when predators seek in-person contact. Roblox has long know that its Platform enables this escalation and facilitates systemic exploitation of children, including predators meeting children in person to kidnap, traffic, rape, and sexually assault those victims.

47.    Countless well-documented cases detail how Roblox facilitated the sexual exploitation and abuse of children by predators they met on the Platform. Examples of these reports include a 2017 report of a predator soliciting an 8-year-old for explicit photos, prompting one parent to call Roblox "the perfect place for pedophiles,"[34] charges against 24 men in 2018 for posing as children on Roblox to solicit sex,[35] and charges in 2019 against a predator who used Roblox to systematically target children ages 10–12 for explicit images.[36]

48.    Reports escalated during the pandemic. For example, in 2020, a 47-year-old used Roblox to groom and traffic a 16-year-old,[37] and a registered sex offender persuaded an 8-year-old to send explicit videos in exchange for Robux.[38]

49.    In 2022 and 2023, similar cases persisted, including kidnappings and sexual abuse of minors groomed on Roblox, with incidents continuing into 2024.[39] Despite new "parental controls"

---

[34] Pei-Sze Cheng et al., *I-Team: Popular Online Gaming Site for Kids is Breeding Ground for Child Sex Predators, Mother Says*, NBC N.Y. (Apr. 6, 2017), https://tinyurl.com/mrc6d38k.

[35] *Cop, Firefighter Among 25 Charged in Child Luring Sting*, FOX 13 TAMPA BAY (Sept. 25, 2018), https://www.fox13news.com/news/cop-firefighter-among-24-charged-in-child-luring-sting.

[36] Max Chesnes, *Deputies Say Vero Beach Man Used Popular Video Game Platforms to Target Children*, TC PALM (Aug. 20, 2019), https://tinyurl.com/muffw857.

[37] Press Release, U.S. Attorney's Off. S.D. Tex., Magnolia Man Gets Life for Exploiting Young Female He Met and Communicated With Via Roblox and Facebook (Oct. 15, 2020), https://tinyurl.com/mrxzrnb5.

[38] *Man Arrested for Inappropriate Relationship with 8-Year-Old Bloomfield Twp. Girl Through Roblox*, WXYZ DETROIT (Sept. 24, 2020), https://tinyurl.com/3hfdxsms.

[39] See, e.g., Man Charged in Kidnapping of 11-year-old He Met Through Roblox from Her NJ Home: Police, ABC7 (Oct. 21, 2023), https://tinyurl.com/22m6nrx3; Grace Toohey, Chilean Man Groomed 13-Year-Old Girl He Met on Roblox Before Flying to U.S. to Meet Her, Police Say, L.A. TIMES (Aug. 22, 2024), https://tinyurl.com/3nxn6ytw.

introduced in 2024 and 2025, predators still access children easily, and arrests for related crimes have not stopped.[40]

50.    In addition to turning a blind eye to the systematic abuse on its Platform, Roblox allows many predators to *openly* publicize their criminal intentions on Roblox and roam the Platform with usernames including "@Igruum_minors," "@RavpeTinyK1dsJE," and other usernames referencing notorious pedophiles like "@EarlBrianBradley."[41]

51.    Conditions on Roblox's platform and the Roblox's continued facilitation, enablement and profit from those conditions has led the National Center on Sexual Exploitation ("NCOSE") to routinely condemn Roblox. In an April 2024 Letter to Roblox, NCOSE informed the company it would be named to the organization's "Dirty Dozen List featuring 12 mainstream contributors to sexual exploitation and abuse," and decried Roblox's long-standing inaction:

> Given that the majority of your user base are children aged 15 and under, **Roblox should be the gold standard in child online safety**. You are profiting primarily from kids – yet at a time of ever-increasing child exploitation online, you continue to refuse to implement basic, common-sense safety and privacy measures. Why? How is it *still* possible for a five-year-old to create a Roblox account and immediately have the ability to connect with adults and to access "experiences" like rape-themed "games"?[42]

52.    These examples are mere drops in the bucket of Roblox's documented failures to protect its child users. Yet Roblox chose to minimize the danger of its Platform through the above-described misleading public relations campaign instead of warning users, parents, and the public. Meanwhile, Roblox admits to investors that it does not "prevent all such interactions from taking place."[43] These irreconcilable statements lay bare that Roblox prioritizes public relations over its duty to warn and protect child users.

---

[40] *See, e.g.*, Richard Raos & Nicole Comstock, *Elk Grove Man Accused of Kidnapping Kern County Girl He Communicated with on Roblox*, CBS NEWS (Apr. 18, 2025), https://tinyurl.com/yeye7xax; Press Release, U.S. Attorney's Off. W.D.N.Y., Fairport Man Who Used Roblox to Attempt to Communicate with Minors for Sex Arrested (May 6, 2025), https://tinyurl.com/ymbe3948.
[41] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5.
[42] Letter from NCOSE to Roblox (April 3, 2024), *available at* https://tinyurl.com/33ham7pk.
[43] Roblox Corp., Registration Statement (Form S-1) (Nov. 19, 2020).

**D.    Despite Knowledge of Pervasive Sexual Exploitation of Children, Roblox Failed to Act.**

53.    Roblox has single-mindedly pursued user growth and revenue at the cost of child safety. Financial pressures from investors before and after Roblox went public in 2021 pushed the company to focus on user acquisition, daily activity, and time spent on the platform.[44] Roblox bowed to these pressures, monetizing children regardless of the consequences to their safety and well-being.

54.    Roblox's safety decisions set it apart from its competitors and placed children at risk: it failed to verify users' ages or identities; allowed unrestricted communications between children and adults; mislabeled explicit content as safe; and welcomed users of any age without parental involvement or consent. Roblox did so with full knowledge of the ubiquitous and devastating abuse children suffered through its Platform.

55.    In an effort to appease investors, Roblox deprioritized safety measures to report strong numbers. During investor calls, Roblox frequently responds to analyst questions about the company's trust and safety expenditures by assuring investors that the company was focused on reducing the relative portion of revenue it spent on safety.[45] In 2024, CEO Baszucki proudly highlighted that, Roblox's trust and safety expenditures as a percent of revenue were decreasing year-over-year.[46]

56.    Roblox has also rejected employee safety proposals, including a proposal for parental approval requirements or other changes that would protect children from predators, due to concerns that these changes could reduce platform engagement.[47] One Roblox employee explained that their role was to "make sure that your users are safe," but only if those protections did not "hurt[] our metrics."[48]

57.    In short, Roblox has consistently subordinated child safety to grow revenue and placate investors, rather than taking steps to address known safety problems on its Platform.

---

[44] *See* Ari Levy & Jessica Bursztynsky, *Roblox Jumps to $38 Billion Mark Cap as Public Investors Get Their First Crack at the Popular Kids Game App*, CNBC (Mar. 10, 2021), https://tinyurl.com/4jzyf4d8.
[45] Roblox Q4 2023 Earnings Call (Feb. 7, 2024), https://events.q4inc.com/attendee/644271456/guest (responding to praise of Roblox's low expenditure on trust and safety, Roblox's CFO Mike Guthrie emphasized "driv[ing]" expenditures even further down).
[46] Q2 2024 Earnings Call (Aug. 1, 2024), https://events.q4inc.com/attendee/891307630/guest.
[47] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5.
[48] *Id.*

14
COMPLAINT

**1.     Roblox's Platform Design Enables and Facilitates Child Sexual Exploitation.**

58.     Roblox's failure to take available steps to increase child safety on its Platform is starkly displayed by its design decisions and actions when faced with rampant child sexual exploitation on its Platform. Had Roblox designed its Platform differently, the harm suffered by Plaintiff and countless other child victims would not have occurred.

59.     Roblox designed its Platform to intentionally allow free and easy communication between children and adult strangers, including adult sexual predators. This design choice allowed for a virtual universe where predators seeking to sexually exploit children flourished.

60.     Roblox designed its limited parental controls for children under 13 to be easy to bypass, as children could easily create an alternate account falsely identifying them as an over-13 user, effectively rendering any apparent parental controls futile.

61.     Unlike competitors like Nintendo, a gaming company that restricts player communication through preset dialogue, Roblox allowed for uncontrolled dialogue between child predators and their victims.[49] If Roblox had adopted similar available chat restrictions, it could have reduced the risk and intensity of harm it enabled predators to perpetrate through its Platform. Predators would have faced significantly more barriers to soliciting children's personal information or sending predatory messages.

62.     Defendant refused to enact other safeguards like identity verification, parental approval, or screening measures to block known predators. Again, Roblox designed its Platform without any identity verification requirements. This decision allows users, including child sexual predators, to create multiple or duplicate accounts. Even if Roblox removed a child predator from its Platform, it did nothing to ensure that the predator did not return to the Platform under another account to continue abusing child users.

63.     Roblox's refusal to enact identity screening was not inadvertent. Roblox designed the Platform to *not* require a user to provide their name and email in order to bypass the Children's Online

---

[49] Olivia Carville & Cecilia D'Anastosio, *Roblox's Pedophile Problem*, BLOOMBERG (July 23, 2024), https://tinyurl.com/5n8vnmrn.

Privacy Protection Act ("COPPA")—protections designed to protect children. Had Roblox collected this data, it would have been required under COPPA to obtain verifiable parental consent for any user under 13 to make an account.[50] A former employee reported that Roblox considered requiring verifiable consent, that employees tried to persuade management that the procedure would improve safety, but that management rejected implementing the requirement out of fear that it might drive users away.[51]

64.    Roblox could have followed established guidance provided by the FTC and designed its Platform to require verifiable parental consent but failed to do so. Roblox could have more safely designed its Platform by, among other things: (a) requiring a signed parental consent form; (b) requiring the use of a credit card or online payment that notifies parents of each transaction; (c) connecting parents to trained personnel via video conference to verify their consent; (d) offering a staffed toll-free number for parental verification; (e) asking knowledge-based questions to confirm identity; and/or (f) verifying a parent's photo-ID by comparing it to a second photo using facial recognition technology.[52]

65.    Roblox also rejected other safety improvements. Roblox executives rejected an improvement that would have enabled default pop-up safety notifications within its Platform warning child users to avoid dangerous behavior, including talking to strangers.[53]

66.    Roblox refused to implement protocols to block digital identifiers of known predators by IP and MAC addresses, verify phone or email addresses, or take other steps to stop known predators from creating multiple accounts.

67.    At all times relevant to this Complaint, Roblox refused to require any age or identity verification preventing children and adults from misrepresenting their ages on the platform.

68.    Roblox failed to meaningfully restrict interaction between adult strangers and child users and failed to restrict these adult strangers from sending Robux to child users. Roblox could have restricted these interactions by, among other things, creating separate spaces for child and adult users

---

[50] FED. TRADE COMM'N, PRIVACY ONLINE: A REPORT TO CONGRESS (1998), *available at* https://tinyurl.com/ftcrept.

[51] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5.

[52] *Complying with COPPA: Frequently Asked Questions*, FED. TRADE COMM'N, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last updated Jan. 2025).

[53] Carville & D'Anastosio, *supra* note 49.

on its Platform, following in the footsteps of other companies like Amazon and Netflix, but chose not to.

69. Roblox also failed to raise the Platform's age rating and otherwise warn parents and children about the prevalence of predators using its Platform and the resulting risks of exposure to those predators and sexual abuse caused by use of its Platform.

70. Instead of warning parents and children, Roblox aggressively markets its Platform as an "industry leader" in safety, touting AI and machine learning protocols that are easily circumvented.[54] Common workarounds include: spelling out phone numbers when numerical format is blocked; using emojis or alternative spellings to bypass blocked terminology; and immediately reuploading explicit experiences that had originally been removed from the Platform.[55]

71. Beyond ineffective safety technology, Roblox employs only 3,000 moderators—far less than other platforms like TikTok, which employs 40,000 moderators—leaving moderators overwhelmed by the volume of safety reports and safety issues unresolved.[56]

72. And while Roblox likes to publicly highlight positive safety data, this data is deeply flawed and only further highlights the Platform's dangers. For example, the company claims it accounts for less than 0.04% of NCMEC reports,[57] but this figure is self-reported and relies on Roblox's ineffective moderation to catch abuse. Similarly, while Roblox congratulates itself for only "0.0063% of [its] total content" being flagged for policy violations, the systems that flag and determine if content violates policy, as well as the safety policies themselves, are all determined by Roblox.[58] This data does not reflect genuine safety; it reflects Roblox's sophisticated strategy to obfuscate its Platform's real and dire safety problems instead of correcting them.

---

[54] *Safety Features: Chat, Privacy & Filtering*, ROBLOX, https://tinyurl.com/4u2uns2h (archived Jul. 14, 2024).
[55] Edwin Dorsey, *Problems at Roblox (RBLX) #5*, THE BEAR CAVE (Oct. 17, 2024), https://tinyurl.com/ymzxyrct; Burt Helm, *Sex, Lies and Video Games: Inside Roblox's War on Porn*, FAST COMPANY (Aug. 19, 2020), https://tinyurl.com/ms2n2tnc.
[56] Carville & D'Anastosio, *supra* note 49.
[57] Scott Tong & James Perkins Mastromarino, *Roblox Attempts to Bar Child Predators as Short Sellers Target the Popular Game Platform*, WBUR (Oct. 21, 2024), https://tinyurl.com/yfh3hrj7.
[58] Vikki Blake, *Roblox Reported Over 13,000 Incidents to the National Center for Missing and Exploited Children in 2023*, GAMESINDUSTRY.BIZ (Jul. 23, 2024), https://tinyurl.com/bdds8ss4.

1

2

      **2.**     **Roblox's New Safety Features Show that It Could Have Taken Steps to Protect Children Long Ago.**

3

4

5

6

     73.    Despite years of police reports and media coverage decrying Roblox's inadequate child safety features, Roblox only announced changes to these features after a scathing report by short-sellers highlighted Roblox's long-standing safety issues and decried Roblox as a "pedophile hellscape for kids" in October 2024.[59]

7

8

9

     74.    A month later, Roblox introduced changes such as banning direct messaging outside of games for users under 13, adding a parental dashboard, restricting chalkboard workarounds, and limiting access to unrated games.[60]

10

11

12

13

14

     75.    These measures could have been implemented years earlier and remained inadequate. Adults could still contact children through in-game chats, which by default allow "everyone" to message users under 13. Without age verification or parental consent requirements, children could still bypass restrictions simply by lying about their age. Roblox has also still failed to expand moderation, increase its safety budget, or block sex offenders from creating accounts.

15

16

17

     76.    Four months after these new features were implemented, researchers confirmed predators could still easily find and groom children, start messaging with those children, and move conversations to off-Platform apps like Snapchat or Discord.[61]

18

19

20

21

22

23

     77.    In April 2025, Roblox announced new parental controls allowing parents to block specific games, block individuals from a child's friends list, and view the games their child plays most frequently.[62] But these measures failed to address the core issue: adult abusers' access to and communication with child users. Parents still could not see who their child messaged, explicit games are still quickly reposted if removed or blocked, and abusers continued to groom children and exchange contact information that would allow them to move the conversations off the Platform.

24

25

26

27

28

---

[59] *Roblox: Inflated Key Metrics for Wall Street and a Pedophile Hellscape for Kids*, *supra* note 5.

[60] *Roblox Tightens Messaging Rules for Under-13 Users Amid Abuse Concerns*, REUTERS (Nov. 18, 2024), https://tinyurl.com/43wcn9a5.

[61] *A Digital Playground: The Real Guide to Roblox*, REVEALING REALITY (Apr. 13, 2025), https://tinyurl.com/342p6k9z.

[62] Kaufman, *supra* note 23.

78.     Finally, in November 2025, Roblox announced a new system to verify user's ages when signing up for an account.[63] Beginning in early January in the United States, the system will require users seeking to use the communication features on Roblox's platform to verify their age either with an ID or using a third-party "Facial Age Estimation" that uses artificial intelligence to estimate a user's age.[64]

79.     Unlike recognized systems of age verification as discussed above, it is not yet clear whether Roblox's new AI-based approach will prove effective at stopping predators from circumnavigating age restrictions. One reporter who used the technology showed that the verification misstated her age by four years.[65] But these new procedures make clear that Roblox could have instituted verification procedures all along but only did so when faced with serious financial and legal pressure.

## PLAINTIFF-SPECIFIC ALLEGATIONS

80.     Plaintiff is a 14-year-old girl who, at the age of 12, was manipulated and groomed through the Roblox Platform by the Abuser, a middle-aged man. The Abuser exchanged sexually inappropriate communications with Plaintiff, coerced her to send sexually explicit photographs, threatened to expose those photographs, and attempted to sexually assault Plaintiff after meeting in person.

81.     Plaintiff first started playing Roblox in approximately 2019, when she was 8 years old. At the time, Plaintiff's Mother trusted that the Roblox Platform was safe for her daughter to use because it was a game marketed for kids. Plaintiff's Mother believed Roblox's public representations of the Platform's security measures for children, which created the perception that the Platform was a safe video game meant for children's entertainment.

82.     In September 2023, when Plaintiff was 12 years old, she was playing a game on the Platform when she encountered the Abuser, whose Roblox avatar virtually approached her and asked to be friends. The Abuser said that he was the same age as Plaintiff and told her that he lived close by in

---

[63] Matt Kaufman & Rajiv Bhatia, *Roblox Requires Age Checks for Communication, Ushering in New Safety Standard*, ROBLOX (Nov. 18, 2025), https://tinyurl.com/ye222e9s.
[64] Rachel Hale, I Got an Up-Close Look at Roblox's New Safety Feature. Here's What I Found., USA TODAY (Dec. 18, 2025), https://tinyurl.com/2x2vv7wd.
[65] *Id.*

Jackson, Mississippi. Through the Platform's games and communication functions, the Abuser exploited Plaintiff's age and trust to build a false friendship.

83.     After grooming Plaintiff on Roblox, the Abuser intensified his exploitation of Plaintiff and convinced her to move their communications to other channels: Instagram and Discord. Abuser started asking Plaintiff to send him pictures of her Roblox avatar, then pictures of herself, and eventually pictures of herself in the bath and shower. Plaintiff sent the photos. The Abuser then threatened to expose these explicit photos of Plaintiff, extorting Plaintiff to force her to cooperate with his requests.

84.     In April 2024, Abuser asked Plaintiff to meet at a mall near her home. Plaintiff showed up at the mall expecting to meet a boy her own age; instead, she was met with a middle-aged man who appeared to be in his forties. The Abuser told her to come outside the mall and to get into his car. There, he told Plaintiff how beautiful she was, then tried to touch and kiss her. Plaintiff escaped from the car and ran away. Plaintiff then immediately called her Mother to pick her up at the mall but was too scared to reveal the truth of the encounter.

85.     It wasn't until days after the in-person encounter that Plaintiff finally told her Mother what had happened, beginning with the grooming through the Roblox Platform.

86.     Plaintiff has suffered, and continues to suffer, profound harm from the grooming, manipulation, and sexual abuse she experienced at the hands of the Abuser who targeted her through the Roblox Platform. Plaintiff's personality has changed drastically, becoming jumpy, nervous, quiet, and easily anxious. Her academic performance has also suffered due to the emotional trauma.

87.     Defendant is responsible for the harm that Plaintiff has suffered. Had Plaintiff's Mother known the truth about the safety risks and hazards in Defendant's Platform, she not would have permitted Plaintiff to use Roblox's platform without strict supervision. Had Defendant implemented basic age or identity screening or effective parental controls, the Abuser could not have targeted and interacted with Plaintiff on the Platform, nor would the Abuser have been able to lure Plaintiff to conversations outside of the Platform.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### INTENTIONAL MISREPRESENTATION

88.    Plaintiff realleges and incorporates the factual allegation set forth above.

89.    As set forth above, Defendant represented to the public (including Plaintiff and Plaintiff's Mother) that its Product was not defective and was safe for children.

90.    This representation was false.

91.    Defendant knew of its Product's defective condition and that it was dangerous for child users and therefore knew its representations to the contrary were false.

92.    Defendant represented that its Product was not defective and was safe for children recklessly and without regard for its truth despite having superior knowledge of the Product's condition and dangerous nature through internal reviews, external studies, and reports made to Defendant.

93.    Defendant intended that users and their parents (including Plaintiff and Plaintiff's Mother) would rely on its safety representations and use or continue to use the Product to Defendant's financial benefit.

94.    Users and their parents (including Plaintiff and Plaintiff's Mother) reasonably relied on Defendant's representations in deciding to allow their children to use the Product. Users and their parents did not and could not have known of Defendant's misrepresentations, and justifiably and reasonably believed that Defendant's Product was safe.

95.    As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff sustained serious injuries and harm.

96.    Plaintiff's Mother's reasonable reliance on Defendant's misrepresentations was a substantial factor in causing Plaintiff's harm.

97.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in designing and misrepresenting the dangers of its Product.

98.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

1

**SECOND CAUSE OF ACTION**

2

**FRAUDULENT CONCEALMENT**

3    99.    Plaintiff realleges and incorporates the factual allegation set forth above.

4    100.    As set forth above, Defendant intentionally failed to disclose the dangerous condition of

5    its Product to retain users, increase revenue, and induce parents to allow their children to use its Product.

6    101.    The public, users, and user's parents (including Plaintiff and Plaintiff's Mother) did not

7    know that defendant's Product was dangerous and posed serious safety risks. These risks were known

8    only to Defendant, and the public, users, and their parents (including Plaintiff's Mother) could not have

9    discovered these serious safety risks.

10    102.    Defendant intended to deceive the public, users, and user's parents (including Plaintiff

11    and Plaintiff's Mother) by concealing the dangerous condition of its Product and the resulting serious

12    safety risks for child users.

13    103.    A reasonable parent determining whether to allow their child to use Defendant's Product

14    would consider information about pervasive sexual abuse and sexual exploitation of child users enabled

15    by that Product material and critical to their decision-making process.

16    104.    Had Defendant disclosed these and other risks present on and enabled by its Product, the

17    public, users, and user's parents (including Plaintiff's Mother) would have behaved differently or not

18    permitted their children to use the platform.

19    105.    As a direct and proximate result of Defendant's concealment of material information,

20    Plaintiff's Mother was not aware and could not have been aware of the facts that Defendant concealed,

21    and justifiably and reasonably believed that Defendant's Product was safe for Plaintiff to use.

22    106.    As a direct and proximate result of Defendant's concealment of material information,

23    Plaintiff sustained serious injuries and harm.

24    107.    Defendant's concealment of material information was a substantial factor in causing

25    Plaintiff's harm.

26    108.    An officer, director, or managing agent of Defendant committed an act of oppression,

27    fraud, or malice in designing and concealing the dangers of its Product.

28    109.    Plaintiff    demands    judgment    against    Defendant    for    injunctive    relief    and    for

22

compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

110.    Plaintiff realleges and incorporates the factual allegation set forth above.

111.    Plaintiff was harmed because Defendant negligently misrepresented that its Product was safe for children.

112.    Defendant's representation was not true. As set forth above, Defendant's Product was dangerous and posed serious safety risks to children.

113.    Defendant knew that its Platform was not a safe place for children, but instead of disclosing that truth, Defendant engaged in a specific and widespread public campaign to laud the safety of its platform through the media, materials provided to parents and users (including Plaintiff and her Mother), and other platforms.

114.    As set forth above, Defendant knew its Product was in defective condition including that it was dangerous and posed serious safety risks to children. Despite this knowledge, Defendant mounted a broad public relations campaign falsely promoting its platform as safe.

115.    Even if Defendant believed that its safety representations were true, Defendant had no reasonable grounds for believing these representations were true because Defendant knew or should have known about the prevalence of child sexual exploitation and abuse occurring regularly on and through its platform.

116.    Defendant intended that users and user's parents (including Plaintiff and Plaintiff's Mother) would rely on its safety representations and use or continue to use the platform for Defendant's financial benefit.

117.    The users and user's parents (including Plaintiff and Plaintiff's Mother) reasonably relied on Defendant's representations when deciding to use or allow Plaintiff to use the Product. Plaintiff's Mother was not aware and could not have been aware of Defendant's misrepresentations, and justifiably and reasonably believed that Defendant's Product was safe.

118.    As a direct and proximate result of Defendant's material omissions and

misrepresentations, Plaintiff sustained serious injuries and harm.

119.    Plaintiff's Mother's reliance on Defendant's safety misrepresentations was a substantial factor in causing harm to Plaintiff.

120.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in misrepresenting the dangers of Defendant's platform.

121.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

122.    Plaintiff incorporates the factual allegation set forth above.

123.    At all relevant times, Defendant developed, configured, managed, maintained, operated, marketed, advertised, promoted, supervised, controlled, and benefited from its Product used by Plaintiff.

124.    Defendant owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its Product not to create an unreasonable risk of harm from and in the use of its products; to protect Plaintiff from unreasonable risk of injury from and in the use of its Products; and not to invite, encourage, or facilitate users, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its Product.

125.    Plaintiff was a foreseeable and intended user of Defendant's Product.

126.    Defendant knew and intended that children like Plaintiff would use its Product.

127.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent and manner of Plaintiff's uses of its Product.

128.    Defendant knew or, by the exercise of reasonable care, should have known, that the use of its Product (as developed, set up, managed, maintained, supervised, and operated by Defendant) was dangerous, harmful, and injurious when used by children such as Plaintiff in a reasonably foreseeable manner.

129.    Defendant knew or, by the exercise of reasonable care, should have known that its Product posed unreasonable risks of harm to children such as Plaintiff. These risks were known and knowable to Defendant at all relevant times.

130.    Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its Product, such as Plaintiff, would not have realized the risks and dangers of using the Product.

131.    Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur with unchecked predators frequently using Defendant's Product to sexually exploit children.

132.    Defendant could have prevented Plaintiff's injuries by prioritizing safety in designing its Product without jeopardizing any purported benefits of the Product to users.

133.    Imposing a duty on Defendant benefits the community at large.

134.    Imposing a duty on Defendant does not burden the company because Defendant has the technological and financial means to avoid posing serious risks of harm to children.

135.    Defendant owed a heightened duty of care to child users because they lack the experience, cognitive development, and emotional maturity of adults, leaving them more likely to make dangerous decisions regarding safe and healthy internet usage and contact with strangers online, and more vulnerable to the many harmful aspects of the Product.

136.    Defendant breached its duty of care owed to Plaintiff through its affirmative malfeasance, actions, business decisions, and policies in the development, set-up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its Product. Those breaches include but are not limited to:

    (a)    designing its Product without effective parental controls;

    (b)    designing its Product without reasonable age restrictions;

    (c)    designing its Product with an open chat function;

    (d)    failing to design its Product to optimize for child safety;

    (e)    failing to set its default privacy settings to the most protective configuration;

    (f)    failing to require age verification;

(g)  failing to require identity verification;

(h)  failing to implement effective screening for known child predators;

(i)  failing to implement effective parent access, monitoring, notification, and controls; and

(j)  failing to implement effective monitoring and reporting for predatory use of the Product.

137.  A reasonable company in the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its Product in a manner that is safer for and more protective of child users like Plaintiff.

138.  At all times, Plaintiff used Defendant's Product in the manner it was intended to be used.

139.  As a direct and proximate result of Defendant's breach of one or more of its duties, Plaintiff was harmed.

140.  Defendant's breach of one or more of its duties was a substantial factor in causing harm and injuries to Plaintiff.

141.  The nature of the unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's Product.

142.  An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in breaching Defendant's duties to Plaintiff.

143.  Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE–FAILURE TO WARN

144.  Plaintiff realleges and incorporates the factual allegation set forth above.

145.  At all relevant times, Defendant designed, developed, configured, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, supplied, and benefited from its Product used by Plaintiff.

146.  Plaintiff was a foreseeable and intended user of Defendant's Product.

147.    Defendant knew, or by the exercise of reasonable care, should have known, that use of its Product was dangerous, harmful, and injurious when used in a reasonably foreseeable manner, particularly by children.

148.    Defendant knew, or by the exercise of reasonable care, should have known, that ordinary consumers such as Plaintiff would not have realized the risks and dangers its Product posed to children like Plaintiff. Those risks include sexual abuse, sexual exploitation, and resultant negative effects of these harms, including but not limited to physical injury, serious mental health issues, increased risky behavior, reduced academic performance, and susceptibility to future sexual exploitation.

149.    Had Plaintiff or Plaintiff's Mother received adequate warnings about the risks that Defendant's Product posed to Plaintiff, she would have heeded such warnings and taken action to protect Plaintiff.

150.    Defendant knew or, by the exercise of reasonable care, should have known that its Product posed risks of harm to children. These risks were known and knowable at the time of development, design, marketing, promotion, advertising, and distribution of the Product to Plaintiff.

151.    Defendant owed a duty to all reasonably foreseeable users, including but not limited to children users, to provide adequate warnings about the risk of using its Product that were known to Defendant, or that Defendant should have known through the exercise of reasonable care.

152.    Defendant owed a heightened duty of care to child users to warn their parents about its Product's risks because children lack the experience and cognitive development to make responsible decisions regarding internet usage and strangers on the internet.

153.    Defendant failed to warn Plaintiff and Plaintiff's Mother about the dangerousness of its Product.

154.    Defendant breached its duties by failing to use reasonable care in providing adequate warnings to Plaintiff and her Mother because, among other reasons described here in, Defendant did not inform consumers (including Plaintiff and Plaintiff's Mother) that:

(a)    its Product allowed children to sign up without parental approval;

(b)    its Product did not screen users including known predators;

(c)    its Product allowed adult users to misidentify themselves as children;

(d)     its Product allowed child users to misidentify themselves as adults and circumnavigate parental controls and safety settings;

(e)     its Product's default settings allowed adults to freely communicate with child users;

(f)     its Product did not block known sexual predators from re-creating accounts even after a safety report;

(g)     its Product was infested with sexual predators who used the Product to sexually exploit children;

(h)     its Product was infested with sexually explicit material and allowed children access to that material;

(i)     its Product increased the risk of child users being groomed, sexually abused, and sexually exploited by predators by and through the Product.

(j)     use of its Product can increase risky, uninhibited, and age-inappropriate behavior in children; and

(k)     use its Product desensitizes children from a young age to devalue their safety, privacy, autonomy, and ability to think critically.

155.     As a direct and proximate result of each of Defendant's breaches, Plaintiff was harmed. Defendant's failure to warn Plaintiff of the Product's dangers was a substantial factor causing her harms.

156.     The nature of the unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's Products.

157.     An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in failing to warn about the dangers of the Product.

158.     Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SIXTH CAUSE OF ACTION

### NEGLIGENCE–DESIGN

159.     Plaintiff realleges and incorporates the factual allegation set forth above.

160.     At all relevant times, Defendant designed, developed, configured, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, supplied, and benefited from its Product used by Plaintiff.

161.     Defendant knew or, by the exercise of reasonable care, should have known that its Product was dangerous, harmful, and injurious when used by children in a reasonably foreseeable manner.

162.     Defendant knew or, by the exercise of reasonable care, should have known that its Product posed risks of harm to children. These risks were known and knowable to Defendant all relevant times.

163.     Defendant knew, or by the exercise of reasonable care, should have known, that ordinary consumers such as Plaintiff would not have realized the risks and dangers its Product posed to children like Plaintiff. Those risks include sexual abuse, sexual exploitation, and resultant negative effects of these harms, including but not limited to physical injury, serious mental health issues, increased risky behavior, reduced academic performance, and susceptibility to future sexual exploitation.

164.     Defendant owed a duty to all reasonably foreseeable users to design a safe product, especially to child users.

165.     Defendant owed a heightened duty of care to child users because of their inexperience and because their brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding safe and healthy internet usage and contact with strangers online.

166.     Plaintiff was a foreseeable user of Defendant's Product.

167.     Defendant knew and intended that children like Plaintiff would use its Product.

168.     Defendant breached its duty in designing its Product.

169.     Defendant breached its duty by failing to use reasonably care in the design of its Product by negligently designing it in a manner dangerous to children, who are unable to appreciate the risks posed by Defendant's Product.

170.     Defendant breached its duty by failing to use reasonable care to implement cost-effective, reasonably feasible alternative designs, including, but not limited to, those described above and other safety measures, to minimize the harm described herein. Alternative designs that would reduce the

29
**COMPLAINT**

dangerousness of the Product were technologically feasible, would not have unduly compromised the purpose of the Product, and would have reduced or eliminated the gravity and severity of danger that the Product posed to Plaintiff.

171.    A reasonable company under the same or similar circumstances as Defendant would have designed a safer Product.

172.    Plaintiff used Defendant's Product in the manner Defendant intended it to be used at all relevant times.

173.    As a direct and proximate result of each of Defendant's breaches, Plaintiff was harmed. Defendant's design of its Product was a substantial factor in causing Plaintiff's harm.

174.    The nature of the unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's Product.

175.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in designing Defendant's Products.

176.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT UNDERTAKING

177.    Plaintiff realleges and incorporates the factual allegation set forth above.

178.    Defendant voluntarily undertook to supply Plaintiff's Mother with parental-control and account-safety services.

179.    These services were of a kind that Defendant recognized or should have recognized as needed for the protection of Plaintiff.

180.    Defendant failed to exercise reasonable care in rendering these services. Specifically, Defendant failed to exercise reasonable care in providing parental-control and account-safety services to prevent child users, including Plaintiff, from being contacted by sexual predators through Defendant's Product.

181.    Defendant's failure to exercise reasonable care was a substantial factor in causing harm

to Plaintiff.

182.    Defendant's failure to exercise reasonable care added to Plaintiff's risk of harm because Plaintiff's Mother relied on Defendant's representations that it exercised of reasonable in rendering parental control and safety services when it did not.

183.    As a direct and proximate result of Defendant's failure to exercise reasonable care in rendering parental control and safety services, Plaintiff suffered significant injuries as described herein.

184.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in rendering services to Plaintiff's Mother.

185.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, punitive, and future pain and suffering damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION

### STRICT LIABILITY–DESIGN DEFECT

186.    Plaintiff realleges and incorporates the factual allegation set forth above.

187.    At all relevant times, Defendant designed, developed, managed, configured, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, distributed, and benefited from its Product used by Plaintiff.

188.    Defendant marketed its Product to Plaintiff and Plaintiff's Mother as a safe place gaming and communication.

189.    Defendant designs its Product to facilitate and encourage children to use its Product.

190.    Defendant also designs its Product to allow content that is harmful to children including sexually explicit content and to enable child predators to prey on child users for the purposes of keeping users on its platform.

191.    The defects in Defendant's Product existed before the Product to the public and there was no substantial change to the Product between the time Defendant placed it or caused it to be placed in the market and when it was distributed to Plaintiff.

192.    Plaintiff used the Product in the manner intended by Defendant, and Defendant, by the exercise of reasonable care, should have known that Plaintiff would use the Product without inspection for its dangerousness.

193.    Defendant's Product is defectively designed and poses a substantial likelihood of harm for the reasons set for herein, because the Product failed to meet the safety expectations of ordinary customers (which, here, includes children and their parents) when used as intended or in a reasonably foreseeable manner, and because the Product was dangerous when an ordinary customer would expect it to be safe.

194.    Defendant markets, promotes, and advertises its Product for use by children and as safe for that purpose. Parents do not expect Defendant's products to be unsafe when used by their children.

195.    Defendant's Product is defectively designed in that it creates an inherent risk of danger to children: specifically, unchecked exposure to child sexual predators who used the Product to identify, groom, and sexually exploit children. Those risks include sexual abuse, sexual exploitation, and resultant negative effects of these harms, including but not limited to physical injury, serious mental health issues, increased risky behavior, reduced academic performance, and susceptibility to future sexual exploitation.

196.    The risk of harm inherent in the design of Defendant's Product significantly outweighs any legitimate benefit for such a design for use by children.

197.    Defendant could have utilized cost-effective, reasonably feasible alternative designs to minimize or eliminate the harms described herein.

198.    Alternative designs—including those described herein—where and are available that would reduce the likelihood, gravity, and severity of harm that the defective design of Defendant's Product posed to children that would have equally or better served the purpose of providing place gaming and communication.

199.    Plaintiff used Defendant's Produce as designed and as intended by Defendant.

200.    Plaintiff used Defendant's Product in reasonably foreseeable ways.

201.    The physical, emotional, and economic injuries that Plaintiff suffered were reasonably foreseeable to Defendant when it developed, designed, marketed, and distributed its Products, as

Defendant knows more about its own Products—and the dangers therein—than anyone else.

202.    Plaintiff was injured as a direct and proximate result of Defendant's defective design as described herein. The defective design of Defendant's Product was a substantial factor in cause the harm she suffered.

203.    As a direct and proximate result of Defendant's defective design, Plaintiff suffered and continues to suffer serious harm.

204.    As a direct and proximate result of Defendant's defective design, Plaintiff has required and will require health-care services and did incur medical, health, incidental, and related expenses.

205.    The nature of the unlawful acts that created safety concerns and harms to Plaintiff are not the type of risk that are immediately apparent from using Defendant's Product.

206.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in designing Defendant's Product.

207.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, punitive, and future pain and suffering damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## NINTH CAUSE OF ACTION

### STRICT LIABILITY–FAILURE TO WARN

208.    Plaintiff realleges and incorporates the factual allegation set forth above.

209.    At all relevant times, Defendant designed, developed, managed, configured, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, supplied, distributed, and benefited from its Product used by Plaintiff.

210.    Plaintiff was a foreseeable and intended user of Defendant's Products.

211.    Defendant's Products are distributed to the public through retail channels.

212.    Defendant designed, marketed, and distributed its Product directly to Plaintiff in a defective and unreasonably dangerous condition.

213.    Defendant failed to adequately warn that its Product was harmful, specifically, that it exposed children to child sexual predators who used the Product to identify, groom, and sexually exploit children which was likely to result in the harm suffered by Plaintiff, namely, identification, grooming,

and sexual exploitation.

214.    Defendant's Product is dangerous to an extent beyond that contemplated by the ordinary user because Defendant lacks adequate, industry-recognized, safety features and moderation leading to the foreseeable prevalence of predators on its Product.

215.    Defendant knew, or by the exercise of reasonable care, should have known, that its Product posed risk of harm to children.

216.    Defendant's Product is defective and unreasonably dangerous because, among other reasons described herein, Defendant failed to exercise reasonable care to inform users and their Parents—including Plaintiff and her Mother—of the risks described above.

217.    Ordinary users would not have recognized the potential risks of Defendant's Product when used as intended by Defendant.

218.    Had Plaintiff's Mother received warnings of risks of using Defendant's Product, she would have heeded the warning and taken action to protect Plaintiff.

219.    Defendant's failure to adequately warn about the risks of its defective Product was a proximate cause and a substantial factor in the injuries sustained by Plaintiff.

220.    The physical, emotional, and economic injuries that Plaintiff suffered were reasonably foreseeable to Defendant when it developed, designed, marketed, and distributed its Product.

221.    The nature of the unlawful acts that created safety concerns and harms for Plaintiff are not the type of risks that are immediately apparent from using Defendant's Product.

222.    Defendant could have, but failed to, warn about the dangers of its Product to protect its own commercial, financial, and legal interests.

223.    An officer, director, or managing agent of Defendant committed an act of oppression, fraud, or malice in failing to warn about the dangers of its Product.

224.    Plaintiff demands judgment against Defendant for injunctive relief and for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **PRAYER FOR RELIEF**

225.    Plaintiff respectfully requests that the Court enter judgment in their favor and against

Defendant as follows:

    (a)    An award of damages, including actual, compensatory, general, special, incidental, consequential, punitive, and future pain and suffering damages, in an amount to be determined at trial;

    (b)    Injunctive, declaratory, and other equitable relief as is appropriate;

    (c)    Pre- and post-judgment interest to the extent provided by law;

    (d)    Attorneys' fees to the extent provided by law;

    (e)    Costs to the extent provided by law; and

    (f)    Such other relief the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

226.    Plaintiff demands a jury trial for all claims so triable.

Respectfully submitted,

**ZIMMERMAN REED LLP**

Date: December 23, 2025    By:    /s/ Caleb Marker
    Caleb Marker
    Jessica M. Liu
    6420 Wilshire Blvd., Suite 1080
    Los Angeles, CA 90048
    Tel: (877) 500-8780
    Fax: (877) 500-8781
    caleb.marker@zimmreed.com
    jessica.liu@zimmreed.com

    Ryan J. Ellersick
    14648 North Scottsdale Road, Suite 130
    Scottsdale, AZ 85254
    Tel: (800) 493-2827
    ryan.ellersick@zimmreed.com

    June P. Hoidal*
    Anna E. Jenks*
    Katja Lange*
    1100 IDS Center
    80 South 8th Street
    Minneapolis, MN 55402
    Tel: (612) 341-0400
    Fax: (612) 341-0844
    june.hoidal@zimmreed.com
    anna.jenks@zimmreed.com
    katja.lange@zimmreed.com

**EILERS LAW FIRM, APC**

Samuel L. Eilers
10727 Gabacho Drive
San Diego, CA 92124
Tel: (206) 375-0280
sam@eilerslawfirm.com

*Counsel for Plaintiff*

\**Pro hac vice* forthcoming.

COMPLAINT